IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEVON LONA LUNN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 1:18CV407 |
| v. | ) | 1:16CR19-4 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Devon Lona Lunn, a federal prisoner, has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket Entry 199.) Petitioner pled guilty pursuant to a plea agreement to conspiracy to distribute cocaine and possession of a firearm by a felon. (Docket Entries 11, 91, 113, 163; 9/7/2016 Minute Entry.) At sentencing, Petitioner's advisory guideline imprisonment range was 151 to 188 months of imprisonment, and the Court both departed downward and varied downward, and imposed a below-guideline term of 87 months of imprisonment. (Docket Entry 174 at 12, 53; Docket Entry 164; 1/30/2017 Minute Entry.) Petitioner's appeal was not successful. *See United States v. Lunn*, 707 F. App'x 176 (4th Cir. 2017), *cert. denied*, 140 S.Ct. 58 (2019). She next filed the instant motion. (Docket Entry 199.) The Government, in turn, filed a response. (Docket Entry 207.) Petitioner then filed three supplements (Docket Entries 210, 213, 215)

and a motion to amend (Docket Entry 214). This matter is now ripe for a ruling. *See* Rule 8, Rules Governing § 2255 Proceedings.

## PETITIONER'S GROUNDS

Petitioner raises four grounds for relief, along with numerous sub-grounds for relief. Because these grounds, and sub-grounds, often overlap and are sometimes duplicative, the Court will, for ease of reference, group and address them below according to the following categories, (1) ineffective assistance of counsel pre-trial, at sentencing, and on appeal and (2) allegations that the district court made "prejudicial" comments regarding a past abusive relationship. (Docket Entry 199, Grounds One through Four.) As explained below, none of Petitioner's grounds or sub-grounds have merit.[1]

## FACTUAL BACKGROUND

The Factual Basis supporting Petitioner's plea was as follows:

> The instant case represents a continuing investigation and prosecution of several members of the "South Carolina Boys," a drug trafficking organization with several members indicted and prosecuted in United States v. Brown et al, 1:14CR285. Interviews and debriefs in that case revealed a group of individuals from South Carolina who were distributing cocaine base "crack" in Surry County. These individuals used common locations to distribute cocaine base "crack" and would travel to South Carolina carrying money and returning with narcotics. The individuals indicted in the instant case (1:16CR19) were originally identified in the course of the prior investigation.
>
> On March 24, 2015, [law enforcement] made a controlled purchase of crack cocaine at DEVON LONA LUNN's

---

[1] The undersigned has attempted to respond to all of the many variations of Petitioner's grounds and sub-grounds for relief. To the extent that any have not been specifically discussed, they should still be denied on the merits for essentially the reasons set out herein.

residence at 289 Cedar Ridge Road, Mt. Airy, North Carolina. An Undercover Officer (UC) and Confidential Informant (CI) were utilized during the purchase and an audio and video recording device were utilized during the deal. Prior to the deal, the UC placed a call to LUNN to ensure she had crack at her residence. LUNN told the CI she was good and to come and get it. When the CI arrived at LUNN's residence, the CI went inside and made a $60.00 worth, approximately .17 grams, crack purchase from LUNN's son, Antonio Hernandez. Antonio told the CI LUNN was in bed. Also present in the residence was Jonathan Torrey Duncan.

On April 16, 2015, [law enforcement] made a controlled purchase of crack cocaine from LUNN at her residence. A UC and CI were utilized during the purchase and an audio and video recording device were utilized during the deal. The UC and CI arrived and went inside to meet LUNN. The CI purchased $80.00 worth, approximately .25 grams, of crack cocaine from LUNN. Also present during the deal were Hernandez and Duncan.

On August 6, 2015, [law enforcement] made a controlled purchase of crack cocaine from Duncan at LUNN's residence at 289 Cedar Ridge Road, Mt. Airy, North Carolina. A UC and CI were utilized during the purchase and an audio and video recording device were used during the purchase. The UC and CI arrived at the residence and the CI met Duncan on the front porch. The CI told Duncan the CI wanted $60.00 worth, approximately .17 grams, of crack. Duncan went inside the residence and shortly thereafter came back out on the porch and handed the CI $60.00 worth of crack. The CI paid Duncan $60.00 and left the residence.

On August 13, 2015, [law enforcement] executed a search warrant at LUNN's residence. LUNN and Duncan were located in LUNN's bedroom. Duncan had been living at the residence for some time and had contributed to its upkeep. Items recovered during the search warrant included a Cobray 9mm pistol, a Marlin .22 caliber rifle, a Winchester .22 caliber rifle, assorted ammunition, several cell phones, documents, quantities of suspected crack cocaine and marijuana, drug paraphernalia, a wallet, purse and a quantity of U.S. currency. Both LUNN and

3

> Duncan were arrested and charged with numerous state narcotics violations.
>
> Both LUNN and Duncan are convicted felons. LUNN has several drug related convictions, including a May 7, 2009 conviction for Sell and Deliver cocaine where she received a 15-18 month sentence. Neither LUNN nor Duncan has had their rights to possess a firearm restored.
>
> LUNN cooperated, was given *Miranda* warnings, and was interviewed. During that interview she indicated that she knew several of her co-defendants and that she was supplied "crack" cocaine for resale by Brian Asbury. LUNN indicated that she and Duncan had cooked crack cocaine together and that he then sold it. LUNN indicated that Duncan had obtained the firearms that were found in the home.
>
> The weapons seized from the residence were not manufactured in North Carolina and therefore, traveled in interstate commerce before Duncan and LUNN possessed them.

(Docket Entry 113.)

## DISCUSSION

### A. <u>Counsel Was Not Ineffective.</u>

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. To show prejudice following a guilty plea, a petitioner must establish that there

4

is a reasonable probability that but for counsel's allegedly deficient conduct, he would have not pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Claims of ineffective assistance of counsel on appeal are also judged using the *Strickland* test. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983); *see also Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

1. **Pre-Trial**

Petitioner contends that the evidence against her was weak, that she was not responsible for any of the crimes to which she pled guilty, that her attorney failed to properly investigate her case, and that her attorney coerced her into pleading guilty. (Docket Entry 199, Grounds One through Four.) Specifically, Petitioner states she "asked for [her] attorney

5

to enter into evidence a recording that the detective on [her] case had of [her] codefendant stating he planted guns and drugs in [her] home." (Docket Entry 199 at 3.) Petitioner denies that the guns in the house were hers and explains that "one gun was found underneath [her] co-defendant's bed in a lockbox that [she] had no access to, the second gun was found in another occupied and locked room," and "the third gun was found outside of the premises in a building that was open and detached from the property." (*Id.* at 4.) Petitioner also contends that "no drugs were found on or around [her]," and they were instead "found in [her] codefendant's belongings," particularly in her co-defendant's clothing. (*Id.*) She further contends "[t]he conspiracy should have been dismissed because the co-conspirator was found non-credible nor reliable." (*Id.* at 5.) Petitioner also claims that "the co-conspirators actions/conversations" with the prosecution and law enforcement "were found to be unproven and non-credible." (*Id.*) She believes "the 'alleged' conversation [she] had with the Detective can't be proven because it was not recorded or taped and [she] never admitted to picking up any drugs from co-defendant Brian Asbury." (*Id.*) Petitioner claims she told the Detective she stopped selling drugs in March or April of 2016, a date prior to her second conviction. (*Id.*) Petitioner also contends that her attorney "kept pressuring [her] to plead guilty even though [she] told him [she] was not guilty[.]" (*Id.* at 9.)

Petitioner has failed to demonstrate ineffective assistance of counsel here. Where, as here, "a defendant is represented by counsel when making [her] guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. [T]o rebut that strong presumption of validity, the defendant must make a factual showing that [her] plea of guilt

6

was not voluntary and intelligent." *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing Court in accepting a plea constitute a formidable barrier to attacking the plea." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations, quote marks omitted). Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without a hearing, dismiss any § 2255 motion that relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. *See also United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice on a claim that defense counsel failed to advise defendant he could be sentenced as a career offender since "if the trial court properly informed Foster of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him").

Here, Petitioner's statements at her change of plea hearing pose a considerable obstacle to her assertions of ineffective assistance of counsel. At her change of plea hearing, Petitioner was placed under oath and stated that she had reviewed a copy of the indictment with counsel, that she understood the charges against her, and that she had fully discussed them with counsel, as well as anything that might be helpful to her in defending her case. (Docket Entry 173 at 3-8.) Petitioner also indicated that there were "some things that were pointed out from the DA that [she] fe[lt were] not fair in this." (*Id.* at 7.) The Court indicated that it would give Petitioner time to talk to counsel to make sure she did not have

7

any unresolved doubts about pleading guilty; however, Petitioner indicated that she did not have any unresolved doubts and that she was comfortable proceeding ahead. (*Id.*)

Petitioner further stated that she was satisfied with her counsel's services, representation, and advice. (*Id.* at 8-9.) The Court then summarized the plea agreement for Petitioner. (*Id.* at 9-10.) As part of this summary, the Court explained to Petitioner that she was agreeing to waive her right to appeal the conviction and sentence on any ground in any post-conviction proceeding except in instances of ineffective assistance of counsel, prosecutorial misconduct, a sentence in excess of the statutory maximum, and a sentence based on an unconstitutional factor. (*Id.*) Petitioner agreed with the Court's summary. (*Id.* at 10.) Petitioner also indicated that she had had enough time to review the plea agreement and discuss it with counsel, that she understood the terms of the plea agreement, and that the plea agreement represented the entire agreement. (*Id.*) Petitioner stated that she understood that the plea agreement contained a waiver of her right to appeal, or pursue post-conviction relief, except in four specific circumstances. (*Id.* at 11.)

Petitioner next stated that no one had attempted in any way to force her to plead guilty against her wishes or made any threats or promises to her, other than those in the plea agreement, in an effort to get her to plead guilty. (*Id.* at 13.) The Court next explained to Petitioner the statutory penalties for the two crimes to which she was pleading guilty, and Petitioner indicated she understood these penalties. (*Id.* at 12-15.) The Court then explained to Petitioner how the advisory sentencing guidelines would be considered during sentencing, and Petitioner indicated that she understood this process. (*Id.* at 15-16.) Petitioner indicated

8

that she understood that her sentence might be different from any estimate provided by counsel. (*Id.* at 16.) The Court then explained to Petitioner her constitutional rights and how, if she pled guilty, she would be giving up many of those rights, which Petitioner indicated she understood. (*Id.* at 18-20.) The Court then explained to Petitioner the elements of the crimes to which she was pleading guilty, which Petitioner indicated she understood. (*Id.* at 20-21.) Petitioner further indicated that she understood that by pleading guilty, she was admitting to the elements of those offenses as those facts were described in the indictment. (*Id.* at 21.) Petitioner then plead guilty to both crimes and stated that she was doing so because she was, in fact, guilty. (*Id.* at 22.)

The Court then found that Petitioner was competent and capable of entering an informed plea, that she was aware of the charges and the consequences of her plea, and that her plea was knowing and voluntary. (*Id.*) Petitioner then indicated that she had reviewed the factual basis and that she agreed with the facts contained in it. (*Id.* at 23.)

These admissions are fatal to Petitioner's ineffective assistance of counsel claims. Petitioner asserts that counsel coerced or pressured her to plead guilty, however, she swore to the contrary at her change of plea. Petitioner also asserts her innocence, however, there was overwhelming evidence of Petitioner's guilt here. This evidence implicated Petitioner in multiple controlled drug purchases from her home; a search of her home revealed drugs, drug paraphernalia, firearms, and money; and she made statements to law enforcement admitting both the manufacture and distribution of crack cocaine and the possession of firearms. (Docket Entry 153, ¶¶ 61-64; Docket Entry 113.)

9

Petitioner's current arguments to the contrary are not persuasive. First, they are vague, conclusory, and unsupported and fail for these reasons alone. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Second, Petitioner's contentions are contradicted by the factual basis set forth above, and further described in the pre-sentence report, which clearly demonstrates that she was part of a conspiracy to distribute crack cocaine, and that she possessed firearms, despite being a convicted felon. For example, Petitioner apparently thinks she should not have been convicted of conspiracy. As stated above, however, Petitioner was advised of the elements of this offense and entered a knowing and voluntary guilty plea, which was supported by a written factual basis to which she did not object.[2]

Third, even assuming counsel's advocacy was somehow objectively unreasonable (which Petitioner has not demonstrated) and counsel failed, for example, to sufficiently investigate her case, there is no reason to believe that Petitioner was prejudiced as a result. Had Petitioner rejected the plea agreement and gone to trial, based on the factual predicate

---

[2] Petitioner's contentions that counsel was constitutionally ineffective for failing to "enter into evidence" certain evidence is also without merit. (*See, e.g.*, Docket Entry 199 at 4.) As demonstrated above, there was no trial in this case because Petitioner chose to plead guilty. To the extent that Petitioner is instead arguing that there was insufficient evidence to support her convictions, that counsel erroneously evaluated the risk of going to trial, or that counsel should have moved to dismiss the indictment, her argument(s) fail for the reasons set forth above. Additionally, to the extent Petitioner posits the existence of evidence tending to exonerate her (such as statements by a co-defendant that he "planted" drugs and guns in her home), such evidence (assuming it exists) is unlikely to have made a difference here, where Petitioner herself made inculpatory statements to law enforcement and where there was also video and audio evidence of her guilt. Likewise, any argument that she was somehow coerced against her will into participating in the criminal activity described herein, and therefore could not be held responsible for her actions, also fails in light of the facts and reasoning set forth in the remainder of this Recommendation.

10

described above and in the presentence report, she likely would have been convicted of both the drug conspiracy and the possession of a firearm crime. In addition to losing any benefit for the acceptance of responsibility, Petitioner also would likely have been convicted of possession of a firearm in furtherance of a drug trafficking crime, and received an additional sixty-month mandatory sentence, consecutive to any other sentence. (Docket Entry 153, ¶ 151.) No rational defendant in such circumstances would have rejected the plea agreement and gone to trial.[3] For all these reasons, this ground for relief has no merit.

### 2. Sentencing

Petitioner contends that she told her counsel that there were statements in her presentence report that were not true and that he was supposed to raise her concerns with the Court. (Docket Entry 199 at 8.) This assertion is contradicted by the record. At sentencing, the Court acknowledge that counsel had filed objections seeking a mitigating role adjustment and disputing the career offender designation. (*Id.* at 2-4.) Petitioner then told the Court that she had reviewed the presentence report with counsel. (Docket Entry 174 at 4.) The Court asked Petitioner if, other than the issue of a mitigating adjustment and the application of the career offender guideline, she agreed with the presentence report. (*Id.*) Petitioner answered: "No, Your Honor." (*Id.*) Counsel and Petitioner then spoke off the record and Petitioner then agreed with counsel they were ready to proceed, and she further indicated that she had no additional objections to the presentence report. (*Id.* at 4.) Counsel

---

[3] Petitioner also asserts that she was not allowed to address the Court and request a new lawyer. (Docket Entry 199 at 9.) However, the record does not support her assertions of being pressured by or being dissatisfied with counsel or being prevented from asking for new counsel. (Docket Entries 173-74.) The record fails to show she made such complaints known to the Court.

11

was not ineffective for failing to raise additional objections to the presentence report when Petitioner had none and where there were no non-frivolous objections to raise.

Petitioner may also be contending that it is unfair that a codefendant's sentence was lower than hers. Here, however, the Court imposed a sentence significantly below Petitioner's guideline range of 151-188 months of imprisonment. (*See* Docket Entry 153, Sentencing Recommendation; Docket Entry 174 at 12.) The Court imposed a variant sentence of 87 months. (Docket Entry 174 at 51, 53-54.) The term was due in no small part to the efforts of counsel in securing a favorable plea agreement and in advocating for a lower sentence; the report of Dr. Hilkey as to abuse Petitioner experienced; the motion filed by the Government; the testimony of Petitioner's sister, and, ultimately, the district court's determination that a variance was warranted. (Docket Entry 91; Docket Entry 174 at 14-61.) The Fourth Circuit also affirmed the Petitioner's sentence on appeal. *Lunn*, 707 F. App'x at 178 ("We discern no error in the court's rulings or its determination of the Guidelines range.") There was no ineffective assistance of counsel at sentencing.

### 3. Direct Appeal

Petitioner asserts (Docket Entry 199 at 1-2, 4-12) throughout her pre-printed § 2255 forms that counsel failed to file her notice of appeal, even after being instructed to do so. Any such argument fails. As noted, counsel filed a notice of appeal, then withdrew, and

12

Petitioner was represented by different counsel on appeal.[4] *See Lunn*, 707 F. App'x at 177. (Docket Entries 168-69, 180, 189-90.) This ground has no merit.

### B. There Were No Prejudicial Comments.

Petitioner also alleges the Court made "prejudicial" comments regarding her past abusive relationships. (Docket Entry 199 at 7.) This ground fails for a number of reasons. First, it does not fall within the limited exceptions to her valid waiver of post-conviction claims and fails for this reason alone. Second, even if considered, this ground has no merit. The Court addressed the situation of Petitioner's past abuse, but it was in connection with her attempt to minimize responsibility for her criminal conduct. (Docket Entry 174 at 43-48.) After a break in the proceedings, defense counsel explained Petitioner's mental state and Petitioner apologized to the Court. (*Id.* at 48-49). The Government characterized the Petitioner as being "more contrite" and did not seek a loss of acceptance of responsibility. (*Id.* at 50.) The Court ultimately concluded a sentence of 87 months was still appropriate. (*Id.* at 50-51, 53-61.) No error occurred.

## Motion to Amend

Petitioner has filed a second set of pre-printed section 2255 forms containing four additional grounds. (Docket Entry 214.) The Court will treat this as a motion to amend and grant Petitioner permission to amend. However, even assuming these grounds are not time-barred, barred by the plea waiver, or barred by Fourth Circuit precedent, *see United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), these new grounds still warrant no relief.

---

[4] The Government did not invoke the application of the appeal waiver contained in Petitioner's plea agreement. *See Lunn*, 707 F. App'x at 177.

First, Petitioner asserts that "[t]he amount of drug[s] sold didn't amount to a gram and that in itself shows non-career offender because [she] wasn't a high-level 'trafficker.'" (Docket Entry 214, Ground One.) Pursuant to U.S.S.G. § 4B1.1, a career offender is a defendant who was at least 18 years old at the time of the instant offense; the instant offense is a felony crime of violence or a felony controlled substance offense; and the defendant has at least two prior felony convictions for either a crime of violence or a felony controlled substance offense. U.S.S.G. § 4B1.1.

As noted, Petitioner pled guilty to conspiracy to distribute cocaine. At sentencing, and over counsel's objection, Petitioner was found to be a career offender because she was at least eighteen years old when she committed the instant felony controlled substance offense and because she had at least two prior felony drug convictions. (Docket Entry 174 at 11-12; Docket Entry 153, ¶ 77.) Petitioner was therefore properly designated a career offender and her argument as to the drug amount is essentially irrelevant to that designation. *See* U.S.S.G. §4B1.1. It is also factually inaccurate. For guideline calculation purposes, the presentence report held Petitioner accountable for .59 grams of cocaine base and 14.17 grams of cocaine hydrochloride. (Docket Entry 153, § 65.) Petitioner did not object to this at sentencing and was held accountable for this amount. (Docket Entry 174 at 4, 11-12.) Beyond this, the Fourth Circuit rejected Petitioner's challenge to her career offender designation on appeal. *Lunn*, 707 F. App'x at 17-78. This ground has no merit.

Second, Petitioner asserts that the "3rd firearm was in an abandoned building . . . outside of the premises that the neighborhood had access to." (Docket Entry 214, Ground

14

Two.) This argument fails. Petitioner's felon in possession of a firearm conviction only required Petitioner to possess a single firearm, which she admitted possessing. (Docket Entry 173 at 21-22; Docket Entry 153, ¶¶ 64, 72; Docket Entry 113.) And, beyond this, Petitioner was not held accountable for sentencing purposes for all of the firearms found during the search of her home. According to the presentence report: "[o]ne of the rifles was located outside in a storage shed and should not be considered for guideline computation purposes." (Docket Entry 153, ¶ 61, 72.) This ground for relief has no merit.

Third, Petitioner next contends that "[t]he location of the 2nd gun was not disclosed in the search warrant [and] the guns seized and the location they were found were not entered into evidence therefore I should not have been charged and the interview b/w the detective and myself were not entered into evidence." (Docket Entry 214, Ground Three.) This argument also fails. Petitioner, a convicted felon, kept two firearms in her home, where she also kept, manufactured, and sold drugs. Petitioner admitted that she, and her co-conspirator, had obtained the weapons from a man named Ronald Haynes. (Docket Entry 153, ¶¶ 57-64; Docket Entry 113.) Petitioner also pled guilty to being a felon in possession of a firearm because she was, in fact, guilty. (Docket Entry 173.) Her conclusory assertions to the contrary warrant no relief.

Fourth, Petitioner asserts that she "qualif[ies] for the 4-pt minimal role reduction [because] [t]he amount of crack cocaine sold was equivalent to .51 grams and not even on a

15

scale of drug trafficker."[5] (Docket Entry 214, Ground Four.) Any assertion of ineffective assistance of counsel here, or an error in the application of the guidelines, is without merit. Prior to sentencing, counsel objected to the fact that a mitigating role under U.S.G.G. § 3B1.2(a) was not reflected in the presentence report and applied to Petitioner as a minimal participant in the criminal activity with a corresponding decrease of four levels. (Docket Entries 143, 147.) The Court considered this argument at sentencing and rejected it because, not only did Petitioner act as the principal in some drug transactions (described above), but she also made statements indicating that (among other things) she had been cooking crack cocaine for sale. (Docket Entry 174 at 9; Docket Entry 153, ¶ 64.) The Fourth Circuit also considered whether the guidelines were properly applied here and concluded that there was no error. *Lunn,* 707 F. App'x at 178 ("We discern no error in the court's rulings or its determination of the Guidelines range."). Petitioner has failed to identify any error here and this ground for relief fails.

## First Supplement

Petitioner has also filed a supplement asking the Court to reconsider its denial of a motion filed by her counsel in January of 2017, prior to sentencing, requesting a four level decrease in her total offense level under the advisory sentencing guidelines for being a minimal participant. (Docket Entry 210.) As explained above, Petitioner was not, and is not, entitled to such relief. The request should be denied.

---

[5] Later in her § 2255 motion, Petitioner faults counsel for not seeking a "two point reduction for minimal role." (Docket Entry 199 at 10-11.) However, this argument also fails for the reasons set forth above.

## Second Supplement

Petitioner has also filed a second supplement in which she again contends that she was improperly designated a career offender, again challenges the firearms attributed to her, and again contends she qualifies for a minimal role reduction. (Docket Entry 213.) However, as already explained above, these arguments have no merit. Petitioner also asks the Court to "apply the Johnson Act or Dimaya Law" to her case. However, neither *Dimaya* nor *Johnson* call into question the validity of Petitioner's convictions for conspiracy to distribute cocaine and for possession of a firearm by a felon and so there was no reason for counsel to mention either case at sentencing. *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018); *Johnson v. United States*, 135 S.Ct. 2551 (2015); *Beckles v. United States*, 137 S. Ct. 886, 890 (2017) (rejecting a due process challenge to the career offender guideline, holding that "the advisory Guidelines are not subject to vagueness challenges").

## Third Supplement

Petitioner has also filed a third supplement. (Docket Entry 215.) In it, she seeks the benefit of certain changes in law made pursuant to the First Step Act. However, the First Step Act is largely forward-looking and not retroactive, applying only where "a sentence for the offense has not been imposed as of [the] date of enactment." Pub. L. No. 115-391, 132 Stat. 5194, § 401(c). Section 404 of the Act makes retroactive only certain statutory changes pertaining to threshold crack cocaine weights triggering mandatory minimum sentences that

17

were enacted under the Fair Sentencing Act of 2010.[6] *See id.*, § 404. This provision does not affect the sentence in Petitioners' case. (1/30/2017 Minute Entry.) She was sentenced in January of 2017, when the Fair Sentencing Act was already in effect. Moreover, the First Step Act was signed into law on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. Petitioner cannot benefit from any of the other sections of the First Step Act, as she was sentenced prior to its effective date and its limited retroactivity does not apply to her.

### Conclusion

For all these reasons, Petitioner's grounds for relief have no merit. Neither discovery, the appointment of counsel, or an evidentiary hearing are warranted here.

**IT IS THEFORE ORDERED** that Petitioner's motion to amend (Docket Entry 214) be **GRANTED**.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (Docket Entry 199), as amended, be denied and that this action be dismissed.

_____
Joe L. Webster
United States Magistrate Judge

February 7, 2020
Durham, North Carolina

---

[6] *See* Pub. L. No. 115-391, 132 Stat. 5194, § 404(b); *see also United States v. Potter*, 927 F.3d 446, 455 (6th Cir. 2019) (noting that § 404 of the First Step Act applies retroactively); *United States v. Jones*, 767 F. App'x 475, 476 (4th Cir. 2019) (noting the process to attain retroactive application of the Fair Sentencing Act under the First Step Act); *United States v. Bedford*, 770 F. App'x 260, 262 (7th Cir. 2019) (discussing the limited retroactivity of the First Step Act); *United States v. Scott*, No. 08-CR-00287-REB-03, 2019 WL 5741331, at *1 n.4 (D. Colo. Nov. 5, 2019) ("Section 404 is the only section of the First Step Act which applies retroactively.") (collecting cases).